**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SCOTTSDALE INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 17-CV-01675 |
| | ) | |
| **POLO MASONRY BUILDERS, INC.,** | ) | |
| **JENNY BUILDERS, INC., ART GUREVICH,** | ) | The Honorable Sara L. Ellis |
| **2450 N. CLYBOURN LLC., and ANTONIA** | ) | |
| **LOPEZ, as Special Administrator of the Estate** | ) | |
| **of ROMAN IATSYSHYN, Deceased,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS
JENNY BUILDERS, INC., ART GUREVICH, AND 2450 N. CLYBOURN,
LLC'S MOTION TO STAY OR DISMISS WITHOUT PREJUDICE**

Plaintiff Scottsdale Insurance Company ("Scottsdale") invokes federal jurisdiction to bypass its obligations to multiple parties in the underlying action. This declaratory action should be dismissed without prejudice or stayed until *Lopez v. Jenny Builders et al.*, 2017-L-001396, currently pending in the Circuit Court of Cook County Illinois, is resolved. The issues raised in the declaratory action are not distinct from those in the underlying action and are being litigated by substantially the same parties. These issues are more appropriate for state court, where Scottsdale can seek comparable relief.

**FACTS:**

**Underlying State Court Action**

On or about February 4, 2017, Roman Iatsyshyn was allegedly working at the construction site at 2450 North Clybourn Avenue[1] in Chicago, Illinois when a cinder

---

[1] Lopez's First Amended Complaint in the underlying action actually lists the "building or structure located at 2448 North Clybourn Street, in the City of Chicago, County of Cook and

block fell and struck and killed him. (Antonia Lopez's Fourth Amended Complaint in the underlying action, attached as Ex. A, pg. 1, ¶ 1; pg. 5, ¶ 7-8). Lopez filed the first Complaint at Law on February 8, 2017, naming Jenny Builders Inc. ("Jenny"), Art Gurevich ("Gurevich"), and Polo Masonry Builders, Inc. ("Polo") as defendants ("Jenny Defendants"). Lopez filed the Amended Lopez Complaint on June 13, 2017, amending its initial allegations and adding 2450 N. Clybourn, LLC ("2450") as a defendant. Lopez filed a Second Amended Complaint on October 11, 2017. Lopez subsequently filed the Third and Fourth Amended Complaints without adding any additional parties.

### Jenny Builders and Art Gurevich's Counterclaims

On or about May 9, 2017, defendants Jenny and Gurevich filed counterclaims in the underlying action against Polo, alleging contribution, express indemnification, and breach of contract (failure to defend and indemnify), arising out of Polo's alleged breach of the 2016 Subcontract between Polo, 2450, and Jenny, and Polo's possible negligence in the underlying action. (Defendants' Amended Complaint for Counterclaims, attached as Ex. B). Polo moved to dismiss counterclaims Two and Three, arguing it has no duty to indemnify or defend the Jenny Defendants in the underlying case. (Polo's Motion to Dismiss attached as Ex. C). The Motion to Dismiss was denied and the issues it addressed remain pending. Jenny and Gurevich subsequently filed an Amended Complaint for Counterclaims on November 13, 2017, adding 2450 as a party to the counterclaims against Polo, and separating the claims into separate counts. (See Ex. B).

---

State of Illinois." (Ex. A, pg. 1, ¶ 1). Defendant refers to the property in question as 2450 N. Clybourn, Avenue in an effort to avoid confusion over the exact location and party names.

**Disputed Contracts**

On or about July 12, 2016, Defendants Polo and 2450 entered into a

"Subcontractor Contract" ("Subcontract") outlining the scope of the work to be

performed on the property located at 2450 North Clybourn Avenue in Chicago, Illinois.

(Subcontract attached as Ex. D). The Subcontract contains an indemnification provision,

which provides, in relevant part:

> g.      The Subcontractor agrees to hold the General Contractor and the
> Construction Manager harmless in an event of any litigation,
> judgment, contingent liability, or any other cause of legal action
> against the General Contractor and/or Subcontractor by a third
> party for injury to a person or property happening in connection
> with Subcontractor's work.

(Ex. D, pg. 2, ¶ 6(g)). The Subcontract further contains another provision

warranting the coverage obtained by Polo:

> i.      The Subcontractor [Polo Masonry] warrants that he is adequately
> insured for injury to its employees and others incurring injury or
> loss as a result of the acts of the Subcontract or its employees or
> subcontractors. The Subcontractor shall furnish to the General
> Contractor [Jenny Builders and/or Art Gurevich] the original
> certificate of insurance showing the coverage for general liability
> for not less than $1,000,000 and workman's compensation and
> listing the General Contractor as an Additional Insured, including
> products/completed operations on a non primary and non-
> contributory basis, with the right of subrogation waived. . .
> .Subcontractor shall provide the General Contractor an additional
> insured endorsement form CG2010 or CG2037.

(Id. at pg. 2-3, ¶ 6(i)). The Subcontract specifically names Polo the

"Subcontractor" and 2450 the "General Contractor." (Id. at pg. 1, ¶ 1-2). The

Subcontract also expressly incorporates a project bid proposal generated by Polo:

"[A]ttached hereto and made an integral part hereof," as part of the agreement.

(Attached as part of Ex. D, pg. 1, ¶ 2). Polo's project bid proposal specifically

identifies Jenny and Gurevich by name, providing that the proposal was "Prepared

3

for: Jenny Builders, Inc" for the project at "2450 N. Clybourn." Id. Gurevich signed the proposal as the "Manager" of 2450. Id.

Relevant to the provision of the Subcontract indemnifying the "Construction Manager," before Polo and 2450 agreed to the Subcontract, on April 1, 2016, Jenny entered into a "Construction Manager Contract," ("CMC") with 2450. (CMC attached as Ex. E). The CMC named Jenny the "Construction Manager." (Ex. E, pg. 1). Polo's Motion to Dismiss Counterclaims, filed in the underlying action, argues that neither Jenny nor Gurevich is the "General Contractor" as is identified in the Subcontract, nor are they parties to that contract or entitled to indemnification under its terms. (Ex. C, pg. 2, ¶ 6; pg. 2-3, ¶ 13-14).

### Disputed Insurance Liability Policies

Scottsdale issued a commercial general liability insurance policy to Polo for January 29, 2017 to January 29, 2018. (Scottsdale's Second Amended Complaint, Doc. 56, pg. 3, ¶ 12). On February 15, 2017, Scottsdale issued a certificate of liability insurance ("COI") to Jenny on Polo's policy. (COI attached as Ex. F). Scottsdale's policy contains an "Injury to Worker Exclusion Endorsement" of its commercial insurance coverage policy with Polo (Doc. 1-1 at 64-65), which it contends relieves it of any duty to defend Polo (Doc. 56, pg. 10, ¶ 46). Following the filing of the underlying action, Scottsdale rejected tenders of coverage to Jenny and Gurevich on February 28 and March 28, 2017 respectively. (Id. at pg. 9, ¶ 38; pg. 10, ¶ 40).

### Scottsdale's Declaratory Action:

Scottsdale is defending Polo in the underlying parallel lawsuit under a full reservation of rights (Doc. 56, pg. 9, ¶ 36). Scottsdale filed its initial Complaint for

Declaratory Judgment against Polo, Jenny, and Lopez on March 2, its Amended Complaint on April 4 against Polo, Jenny, Gurevich, and Lopez, and its Second Amended Complaint on August 16, 2017 against Polo, the Jenny Defendants, and Lopez.

Scottsdale seeks a declaration, in part, that it owes no duty to defend or indemnify Polo, or the Jenny Defendants, an argument based partially on the "Injury to Worker Exclusion Endorsement" included in Polo's insurance policy. (Doc. 56, pg. 10, ¶ 46; pg. 12, ¶ 55; pg. 12-13, ¶ 60; pg. 13, ¶ 62; pg. 13, ¶ 64; pg. 14, ¶ 68; pg. 14, ¶ 70; pg. 14, ¶ 72). Scottsdale also argues that because Jenny purportedly did not enter into a written contract or agreement with Polo with respect to the construction project at 2450 North Clybourn Street, it cannot be an additional insured under the policy in question, just as Polo argued in its Motion to Dismiss in the underlying action, (See Doc. 56, pg. 11-12, ¶ 52-54). Scottsdale posits the same argument as to Gurevich. (Id. at pg. 12, ¶ 57-59).

## ARGUMENT

This Court should stay or dismiss without prejudice Scottsdale's declaratory action as a proper exercise of its discretion under the *Wilton/Brillhart* abstention doctrine and authority granted by the Declaratory Judgment Act ("the Act"). Courts use the Supreme Court's abstention doctrine as outlined in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942) and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) to determine whether to hear declaratory actions. The Act grants district courts discretion to determine whether to exercise jurisdiction over or stay a federal declaratory judgment claim where a state court suit presenting the same issues is pending. *See Wilton*, 515 U.S. at 282 ("*Brillhart* makes clear that district courts possess discretion in determining whether and when to entertain

an action under the [] Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites.").

As the Supreme Court instructed in *Brillhart*, "[I]t would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 S.Ct. at 495, The Supreme Court repeated this instruction in *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 663 (1978): a district court is under "no compulsion to exercise [its] jurisdiction where the controversy may be settled more expeditiously in the state court." The Court underscored this point in *Wilton*, writing, "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in gratuitous interference if it permitted the federal declaratory action to proceed." *Wilton*, 515 U.S. 277 (internal citation omitted).

In considering abstention, the Seventh Circuit provides:

> [F]ederal court[s] should consider (among other matters) whether the declaratory suit presents a question distinct from the issues raised in the state court proceeding, whether the parties to the two actions are identical, whether going forward with the declaratory action will serve a useful purpose in clarifying the legal obligations and relationships among the parties or will merely amount to duplicative and piecemeal litigation, and whether comparable relief is available to the plaintiff seeking a declaratory judgment in another forum or at another time.

*Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692 (7th Cir.1995). In the instant case, every element of what is frequently referred to as the *Wilton/Brillhart* abstention doctrine – a parallel state proceeding, state law issues appropriate for state adjudication, and a risk of duplicative, piecemeal litigation – is present and justifies this court staying or dismissing without prejudice this declaratory action.

## I.     Parallel Proceedings

The underlying action and the instant declaratory proceedings are parallel. "[A]s the Supreme Court has made clear, the *Wilton/ Brillhart* abstention doctrine appropriately applies in a diversity case where a declaratory judgment is sought and a parallel state proceeding also exists." *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010) (citing *Wilton,* 515 U.S. at 283). "Two actions are parallel when substantially the same parties are contemporaneously litigating substantially the same issues in two fora." *Envision Healthcare, Inc.*, 604 F.3d at 986-987 (citing *Sta–Rite Indus., Inc. v. Allstate Ins. Co.,* 96 F.3d 281, 287 (7th Cir. 1996).

### a.   Substantially Similar Parties and Issues

The parties to the two actions are substantially the same; *Lopez* involves Lopez's wrongful death action against Jenny, Gurevich, 2450, and Polo, with Scottsdale involved by way of its defense of Polo under a full reservation of rights. Similarly, the parties to the instant declaratory action include the plaintiff, Scottsdale, as well as Polo, Jenny, Gurevich, 2450, and Lopez. Scottsdale's absence as a named defendant in the *Lopez* action does not mean that the parties are not substantially similar. "It is not necessary that the parties be identical in both actions for the *Wilton/Brillhart* abstention doctrine to apply." *Indian Harbor Ins. Co. v. Republic Services, Inc.*, 10 C 3310, 2010 WL 3701308, at *2 (N.D. Ill. 2010) (citing *Envision,* 604 F.3d at 986).

The issues involved in the underlying and declaratory cases need not be identical. "[T]he Seventh Circuit has held that the 'question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the foreign litigation will dispose of all claims presented in the federal case.'" *Ryan Intern. Airlines, Inc. v. E. Tr.*

*SUB-2*, 10 C 50135, 2011 WL 893041, at *4 (N.D. Ill. 2011) (unreported) (*quoting AAR Int'l Inc. v. Nimelias Enters. S.A.,* 250 F.3d 510, 518 (7th Cir. 2001). Here, both actions involve almost identical arguments by both Polo and Scottsdale as to their lack of a duty to defend or indemnify the Jenny Defendants.

The two proceedings also arise out of the same incident and transactions. The question of whether Polo, and through Polo, Scottsdale, owe the Jenny Defendants a duty to defend or indemnify in the underlying action arise out of Mr. Iatsyshyn's death and the subsequently filed wrongful death action. In the underlying state court action, the Jenny Defendants seek indemnity and damages for breach of contract from Polo's failure to indemnify them. (Ex. B). Polo argues no such duty existed, as Jenny and Gurevich were allegedly not parties to any contract with Polo. (Ex. C). The declaration that Scottsdale seeks in this action is no more than an affirmative defense and/or an alternative forum to litigate the pending counterclaims in the state court action, such that the "declaratory posture of this case serves no useful purpose." *A.G. Edwards & Sons, Inc. v. Pub. Bldg. Comm'nn of St. Clair Cnty.*, 921 F.2d 118, 122 (7th Cir. 1990); *e.g. Gen. Motors Corp. v. M&G Mgmt.*, No. 02 C 6558, 2003 WL 21501782, at *3 (N.D. Il. 2003) (unreported) (abstaining in part because party seeking declaration that contract had been assigned could raise assignment defense in state court).

Equally relevant to both cases are the scope, parties, and liability insurance coverage provided to the Jenny Defendants in the context of the Subcontract (Ex. D) with Polo. Within that dispute, another question that arises is whether the protections extended under the Subcontract to 2450, the "General Contractor," who is entitled to being held "harmless" under the terms of that agreement, provide any related protection to Jenny or

Gurevich. Polo argues these points specifically in its Motion to Dismiss Counterclaims in the underlying action. Whether Jenny and Gurevich are parties to the Subcontract and entitled to Scottsdale's defense and indemnity is of direct concern in both of these cases.

Similar questions permeate both cases regarding Polo's efforts to provide coverage to the Jenny Defendants pursuant to the Subcontract. This includes what knowledge Scottsdale had of any agreements, to provide liability coverage or otherwise, between Polo, and the Jenny Defendants. Whether the issuance of this COI was related to any efforts by Polo to obtain coverage for Jenny is relevant to both the underlying and declaratory actions. All of these issues are present and relevant in both the underlying and declaratory cases, illuminating the parallel nature of the two cases.

### b. Unpleaded-But-True-Facts Favor the Jenny Defendants

Of potentially paramount importance is the existence of the COI (Ex. F) Scottsdale issued to Jenny. In their counterclaims in the underlying action, the Jenny Defendants cite specifically to the existence of the COI in support of their claim against Polo for breach of contract. (Ex. B, pg. 8, ¶ 33). The fact of the COI being litigated in the underlying action could be outcome determinative. The rule of Illinois law most important here is that if the underlying complaint alleges several theories of recovery, the insurer's duty to defend arises "even if only one such theory is within the potential coverage of the policy." *Title Indus. Assurance Co., R.R.G. v. First Am. Title Ins. Co.*, 853 F.3d 876, 884 (7th Cir. 2017) (*quoting Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 346 (7th Cir. 2010) (citation omitted)). Where, as here, there exists a dispute over whether a party is insured under a subcontract, a COI listing a party as an additional insured can provide evidence of the parties' contractual intent. *See*

*Old Republic Ins. Co., v. Kenny Construction Co.*, 2017 U.S. Dist. LEXIS 181412, 2017 WL 4921970, at *5 (N.D. Ill. October 31, 2017) ("Although insurance certificates containing a disclaimer indicating that they do not affect the terms of the underlying insurance policy have no binding force, insurance certificates may serve as evidence of the intent of the parties to a subcontract where the terms of the subcontract are ambiguous."). *Old Republic Ins. Co.* involved a dispute between a construction company and insurance provider over whether insurer had a duty to defend or indemnify the company, a subcontractor to the insurer's policyholder. *Old Republic Ins. Co.*, 2017 U.S. Dist. LEXIS 181412, 2017 WL 4921970, at *1. In addressing the ambiguity of the policy, the court considered the policy's ambiguity as to the subcontractor and held that the issuance of a COI "demonstrate the intent of Meccon and Kenny that the subcontract required Kenny to be an additional insured on Meccon's CGL policy." *Id.* at *5. Here, like in *Old Republic Ins. Co.*, Scottsdale issued a COI to Jenny listing the company as an additional insured under Polo's policy. (See Ex. F).

### c. **This Court Should Consider Unpleaded-But-True-Facts Favor the Jenny Defendants**

It is true that in deciding whether an insurer breached its duty, Illinois courts ordinarily apply the "eight-corners[2]" rule: the court "'compares the four corners of the underlying complaint with the four corners of the insurance policy to determine whether facts alleged in the underlying complaint fall within or potentially within coverage.'" *Title Indus. Assurance Co., R.R.G.*, 853 F.3d at 883 (quoting *American Alternative Ins. Corp. v. Metro Paramedic Services, Inc.*, 829 F.3d 509, 513–14 (7th Cir. 2016)).

---

[2]Courts have alternatively referred to this as the "four-corners rule" (*See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 878 (7th Cir. 2005)) and the "eight-corners rule." *See Title Indus. Assurance Co., R.R.G. v. First Am. Title Ins. Co.*, 853 F.3d 876, 883 (7th Cir. 2017).

However, the existence of the COI is a true-but-unpleaded-fact that this Court should consider and based on an exception to the "eight-corners" rule. "[W]hen an insurer brings a timely declaratory judgment action, Illinois courts may look beyond the four corners of the underlying complaint and consider extrinsic evidence, such as a separate but related pleading." *Id.* at 883-884 (citing *Pekin Ins. Co. v. Wilson*, 237 Ill.2d 446, 930 N.E.2d 1011, 1019 (2010)). "In 2010, the Supreme Court of Illinois clarified that courts "may, under certain circumstances, look beyond the underlying complaint in order to determine an insurer's duty to defend. *Malaker v. Cincinnati Ins. Co.*, 09 C 1140, 2011 U.S. Dist. LEXIS 37768, 2011 WL 1337095, at *7 (N.D. Ill. April 7, 2011) (quoting *Pekin Ins. Co.*, 237 Ill.2d 446, 930 N.E.2d at 1019). The "true-but-unpleaded-facts doctrine," which is applicable to declaratory actions such as this one, is typically applied "to show that an insurer had the duty to defend, the extraneous facts possessed by the insurer and known to be true were facts the insurer discovered during its own investigation of the underlying action." *Shriver Ins. Agency v. Utica Mut. Ins. Co.*, 750 N.E.2d 1253, 1259 (2d Dist. 2001).

## II.  The declaratory action creates a risk of duplicative, piecemeal litigation

This Court should grant the Jenny Defendants' Motion even if it holds that these that the cases are not parallel. *See Envision Healthcare, Inc.*, 604 F.3d at 986 (citing *Nationwide*, 52 F.3d at 692 ("That does not mean that abstention is limited to parallel proceedings.")). Proceeding with the declaratory action will amount to duplicative and piecemeal litigation. Issues concerning whether Gurevich and Jenny are parties to the Subcontract between 2450 and Polo, and related to that, entitled to defense or indemnity by Polo, and through Polo, Scottsdale, will have to be litigated in the underlying action.

11

Addressing those issues in the instant case would be duplicative. Further, regardless of the outcome of the instant declaratory action, Lopez's claims against Polo, and the Jenny Defendants will proceed no matter the outcome of the instant action. If this Court were to hear Scottsdale's declaratory claims prior to the conclusion of the underlying action, and Scottsdale were unsuccessful, Scottsdale too would be guaranteed to continue litigating in the underlying action. *See Smith & Nephew, Inc. v. Andrews*, No. 06 C 2527, 2007 WL 772947, at *4 (N.D. Ill. 2007) (dismissing declaratory action in favor of state action for damages in part because "any witness called in this action will [] testify in State Court, and likely be asked the same questions").

### III. These Issues Should be Addressed in State Court

Further, Illinois law, as opposed to federal law, governs the issue of whether Scottsdale has a duty to indemnify Polo, and the Jenny Defendants. Under Illinois law, "the question of whether the insurer has a duty to indemnify the insured for a particular liability is only ripe for [adjudication] if the insured has already incurred liability * * * against it." *Sentry Ins. v. Cont'l Cas. Co.*, 2017 IL App (1st) 161785, ¶ 36, 74 N.E.3d 1110, 1121 (*quoting Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 127, 607 N.E.2d 1204, 1221 (Ill. 1992)).

It is black letter law in Illinois that trial courts lack the authority or the discretion to make declarations concerning coverage based on undecided issues of ultimate facts upon which recovery may be predicated in the underlying case. *Maryland Casualty Co. v. Peppers*, 64 Ill.2d 187, 197, 355 N.E.2d 24, 30 (1976). "Under the *Peppers* doctrine, 'it is generally inappropriate for a court considering a declaratory judgment action to decide issues of ultimate fact that could bind the parties to the underlying litigation.'" *Sentry*

12

*Ins.*, 2017 IL App (1st) 1618785, ¶ 43, 74 N.E.3d at 1123 (*quoting Landmark American Ins. Co. v. NIP Group, Inc.*, 2011 IL App (1st) 101155, ¶ 59).

Illinois courts are most familiar with and should apply their own law as to issues of insurance coverage, defense, and indemnity. *See e.g.*, *Sta-Rite Indus., Inc.*, 96 F.3d at 287 (holding that declaratory judgment action should be dismissed in favor of Wisconsin state proceeding because dispute involve question of Wisconsin insurance law); *A.G. Edwards & Sons*, 921 F.2d at 121 (affirming dismissal in part because state law applied and the "state court's greater familiarity with its own law persuades us it was not an abuse of discretion for the federal court to step aside out of respect for the [state] court.").

The question of whether Scottsdale, through its defense of Polo under a reservation of rights, owes any duty to defend or indemnify any other party can easily be resolved as an issue of state law. Indeed, the issue of whether the signatories to the agreements disputed as part of the counterclaims and defenses in the *Lopez* case are applicable to these parties is better resolved as part of the resolution of the Jenny Defendants' counterclaims. "Since usually an insurance company's 'duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit,' [] 'decisions about indemnity should be postponed until the underlying liability has been established." *Gen. Ins. Co. of Am. v. Clark Mall, Corp.*, 841 F. Supp. 2d 1057, 1060–61 (N.D. Ill. 2012) (internal citations omitted) (quoting *Nationwide*, 52 F.3d at 693). The Seventh Circuit wrote in *Nationwide*:

> When the underlying facts and the nature of the insured's conduct are disputed, the court presiding over the declaratory action typically cannot decide whether the insured acted negligently or intentionally (and consequently whether he has coverage or not) without resolving disputes that should be left to the court presiding over the underlying tort action.

52 F.3d at 694.

13

Scottsdale is familiar with this body of law. In *Scottsdale Ins. Co. v. City of Waukegan*, 13-CV-03088, 2014 WL 3600517 (N.D. Ill. 2014) (unreported), the court granted the defendant's motion to dismiss the plaintiff, Scottsdale's declaratory action with respect to counts three through seven of the complaint, dealing with coverage and indemnity. *Id.* at *3. As here, Scottsdale sought a declaration that duties it had to indemnify the defendant in the underlying action, in that case, an action against a municipality for wrongful charging, prosecution, and conviction. *Id.* The court held that adjudicating those issues would have required it to make "impermissible factual determinations upon which liability could be predicated," in violation of the *Peppers* doctrine. *Id.* Similarly, the court held that under *Wilton*, abstention was a proper exercise of the court's discretion. *Id.*

In a published decision in the same case, *Scottsdale Ins. Co. v. City of Waukegan*, 80 F. Supp. 3d 894 (N.D. Ill. 2015), the court affirmed its earlier reasoning, holding the municipality's counterclaims for indemnity were not ripe for adjudication under the *Peppers* doctrine. 80 F. Supp. 3d at 899-900. The court wrote, "[T]he question of whether the insurer has a duty to indemnify the insured for a particular liability is only ripe for consideration if the insured has already incurred liability in the underlying claim against it." *Id.* at 899 (quoting *Outboard Marine Corp.*, 154 Ill.2d 90, 607 N.E.2d at 1221.

## IV.   State law remedies are available to Scottsdale

Finally, comparable relief is available to Scottsdale in another forum. If the *Lopez* plaintiff's case ultimately fails or claims against Polo, are dismissed, the issues in the instant case will be resolved. Federal courts have found abstention to be proper under such circumstances. *See Gen. Motors Corp.*, No. 02 C 6558, 2003 WL 21501782, at *3

14

(one factor weighing in favor of abstention was that declaratory judgment plaintiff could raise its clams as defenses or counterclaims in the state action).

## V. The Jenny Defendants Join Lopez

Lastly, the Jenny Defendants join Lopez in her Motion to Stay or Dismiss with respect to her arguments as to the "Temporary Worker Exclusion" and the "Injury to Worker Exclusion" being a "Material Adverse Change" as the issues raised in these arguments will have to be litigated in both fora.

WHEREFORE, Defendants, Art Gurevich, Jenny, Inc., and 2450 N. Clybourn, LLC respectfully request that this Court enter an Order:

A. Granting Defendants' Motion and staying the declaratory action currently pending before this Court, or alternatively;

B. Dismissing this pending declaratory judgment action, without prejudice, with leave to refile after the underlying litigation is resolved; and

C. For such further relief that this Honorable Court deems just.

Respectfully submitted,

s/ *Andrew H. Haber*
One of the Attorneys for Defendants
Art Gurevich, Jenny Builders, Inc.,
and 2450 N. Clybourn, LLC

Patrick J. Gorman
*pgorman@favarogorman.com*
Andrew H. Haber
*ahaber@favarogorman.com*
Max Barack
*mbarack@favarogorman.com*
Favaro & Gorman, Ltd.
835 Sterling Avenue, Suite 100
Palatine, Illinois 60067
(847) 934-0060 (telephone)
(847) 934-6899 (facsimile)