THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SCOTTSDALE INSURANCE COMPANY,

Plaintiff,

v.

POLO MASONRY BUILDERS, INC.,
JENNY BUILDERS, INC., ART GUREVICH,
2450 N. CLYBOURN LLC., and ANTONIA
LOPEZ, as Special Administrator of the Estate
of ROMAN IATSYSHYN, Deceased,

Defendants.

Case No.  17-cv-1675

District Court Judge: Hon. Sara J. Ellis

Magistrate Judge:  Hon. Maria Valdez

## PLAINTIFF'S RESPONSE TO DEFENDANTS JENNY BUILDERS, INC., ART GUREVICH, AND 2450 N. CLYBOURN, LLC'S MOTION TO STAY OR DISMISS WITHOUT PREJUDICE

Defendants Jenny Builders, Inc., Art Gurevich, and 2450 N. Clybourn, LLC (collectively "Jenny Defendants") base their motion requesting that this Court abstain to decide the entire case on a secondary coverage defense that pertains to only two of the four defendants in this declaratory judgment action.  Whether there exists a written contract or agreement between Polo Masonry Builders, Inc. ("Polo") and Gurevich and/or Jenny Builders, Inc. ("JBI") requiring Polo to name them as additional insureds on its liability insurance policy is too peripheral an issue to warrant abstention over the entire declaratory judgment action.

Plus, none of the *Wilton-Brillhart* factors favors dismissal or stay of this declaratory judgment action.  Most significantly, this secondary coverage defense poses factual and legal questions distinct from the disputed facts or issues to be adjudicated in the ongoing state court personal injury lawsuit. Therefore, this Court should exercise its substantial discretion to not abstain from adjudicating this proceeding and, in turn, should deny the Jenny Defendants' motion.

## FACTUAL BACKGROUND

### I. The Underlying Wrongful Death Lawsuit by Lopez Against the Jenny Defendants and Polo

The Cook County lawsuit brought by Antonia Lopez, as special administrator of the Estate of Roman Iatsyshyn ("Lopez"), against Gurevich, JBI, Polo, and 2450 N. Clybourn, LLC ("Clybourn"), arises from Iatsyshyn's death at a construction site. The Fourth Amended Complaint is the operative pleading. *See* Dkt. #87-1, Ex. A. It generally alleges that on or about February 4, 2017, Iatsyshyn, who was working at the site, was fatally struck in the head by a cinder block dropped by another worker. It also generally alleges that the negligence of Gurevich, JBI, Polo, and Clybourn caused Iatsyshyn's death.

### II. The Underlying Counterclaim by the Jenny Defendants Against Polo Based on Polo's Alleged Noncompliance with the Subcontractor Contract

Gurevich and JBI filed amended counterclaims against Polo for contribution, express indemnification, and breach of contract. *See id.*, Ex. B. Gurevich and JBI allege that they, in pertinent part, entered into a Subcontractor Contract with Polo or are "intended third-party beneficiaries" of the contract. *See id.*, ¶¶ 19, 20, 29, 30. Gurevich and JBI also allege Polo was obligated to obtain a liability insurance policy under which Gurevich and JBI would be entitled to additional insured coverage against Lopez' suit. *See id.*, ¶¶ 49, 52, 53, 63, 66, 67.

Notably, the only two signatories to the Subcontractor Contract, which is attached as an exhibit to the amended counterclaims, are a representative of Polo, as subcontractor, and a representative of Clybourn, as general contractor. *See* Dkt #87-3, Ex. D. Also, the Subcontractor Contract does not expressly require that Polo name anyone other than Clybourn, as "General Contractor," as an additional insured under an insurance policy. Nevertheless, while Gurevich and JBI quote the insurance provision of the Subcontractor Contract, which references only Clybourn,

they allege in conclusory fashion that Polo was somehow required to name Gurevich and JBI as additional insureds on Polo's general liability policy. *See* Dkt. #87-1, Ex. B, ¶¶ 53, 67.

Polo argues in response to the breach of contract counts that Gurevich and JBI are not parties to the contract, but never argues the absence of a requirement that Polo name Gurevich or JBI as additional insureds under an insurance policy. *See* Dkt. #87-2, p. 5 of 88.

## III. The Requirements for Additional Insured Coverage under the Scottsdale Policy

Scottsdale issued to Polo commercial general liability insurance policy, No. CPS2604015, for the January 29, 2017 to January 29, 2018 policy period ("Policy"). *See* Dkt. #56-1.

The Policy contains an Additional Insured – Owners, Lessees or Contractors – Automatic Status When Required in Construction Agreement With You Endorsement, which provides, in pertinent part, as follows:

> **A.** **Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. …

## ARGUMENT

## I. The Mere Pendency of the Underlying Lawsuit Does Not Preclude the Requested Determination That Scottsdale Has No Duty To Defend or Indemnify the Jenny Defendants in the Underlying Lawsuit.

The Federal Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202) allows for the "efficient resolution of disputes by an early adjudication of the rights of the parties." *Med. Assurance Co. v. Hellman*, 610 F.3d 371, 377 (7th Cir. 2010). Nonetheless, the Supreme Court in *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995), and *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491, 494-495 (1942), recognized district courts' discretion to stay or dismiss declaratory judgment actions during the pendency of a parallel state court proceeding. This concept is often referred to as the *Wilton-Brillhart* Doctrine. However, the Seventh Circuit recognizes that the mere existence of a parallel

proceeding, by itself, does not warrant a stay or dismissal of a declaratory judgment action under the *Wilton-Brillhart* Doctrine. *Hellman*, 610 F.3d at 379.

A.   **The Seminal Seventh Circuit Case Holds That the *Wilton-Brillhart* Doctrine Does Not Preclude Resolution of an Insurance Coverage Dispute.**

The Seventh Circuit and the Illinois federal district courts have analyzed the *Wilton-Brillhart* Doctrine in connection with insurance coverage cases on several occasions. The leading case is *Nationwide Insurance v. Zavalis*, 52 F.3d 689 (7th Cir. 1995). There, the underlying tort lawsuit arose from college students setting fire to the AstroTurf of the University of Illinois football field. *Id.* at 690. The underlying complaint, filed in Illinois state court, asserted negligence claims against the students. *Id.* at 690-91. Nationwide, which had issued a homeowner's insurance policy to one of the students, initiated a federal declaratory judgment action seeking a ruling that it had not duty to defend or indemnify the student, invoking the exclusion for expected or intended property damage. *Id.* at 691. The district court granted the defendants' motion to dismiss based on the pendency of the state court proceeding. *Id.*

On appeal, the Seventh Circuit cautioned that the "mere pendency of another suit is not enough in itself to refuse a declaration." *Id.* at 692. The Seventh Circuit then listed a series of factors a district court should consider before abstaining:

> Whether the declaratory suits presents a question distinct from the issues raised in the state court proceeding, whether the parties to the two actions are identical, whether going forward with the declaratory judgment action will serve a useful purpose in clarifying the legal obligations and relationships among the parties or will merely amount to duplicative and piecemeal litigation, and whether comparable relief is available to the plaintiff seeking a declaratory judgment in another forum or at another time.

*Id.* at 692.

Applying these considerations, the court concluded abstention was improper. It initially determined the two proceedings were fundamentally distinct. *Id.* Specifically, the state tort suit turned upon the liability of the college student for damage to the football field whereas the federal

declaratory judgment action focused on Nationwide's policy obligations to the college student-insured. *Id.* at 693. While certain aspects regarding the conduct of the college student may had necessitated overlapping inquiries, the resolution of the duty to defend would not, since it could be determined from the face of the underlying complaint. *Id.* at 693. This is especially true where the underlying circumstances are either "undisputed or, in light of the previously established facts, beyond dispute . . . ." *Id.* at 694. Accordingly, since the district court did not need to conduct a trial to determine whether the college student's conduct was negligent or intentional because it could reach its conclusion by simply examining the allegations of the underlying lawsuit, abstention was improper. *Id.* at 695. Instead, the discrete inquiry called for by the insurer's declaratory judgment action "pose[d] no demonstrable need to engage in any extensive discovery or factfinding that might interfere with the progress of the University's action in state court." *Id.* at 697.

### B. Illinois Federal District Courts Have Often Declined Abstention in Circumstances Analogous To the Instant Ones.

Contrary to the Jenny Defendants' assertion, courts routinely decline *Wilton-Brillhart* Doctrine abstention where, as here, there is an underlying state court tort action and a federal declaratory judgment action adjudicating insurance coverage. For instance, in *General Insurance Co. of America v. Clark Mall, Corp.*, 841 F. Supp. 2d 1057 (N.D. Ill. 2012), the district court declined to dismiss or stay a declaratory judgment due to the pendency of a state court proceeding. Specifically, the underlying suit arose out of a fire at a mall owned by the insured, Discount Mega Mall Corporation ("Discount"). *Id.* at 1058. Discount was sued by mall vendors for negligently maintaining the property. *Id.* In turn, Discount's insurer refused to defend and initiated an insurance coverage action in federal court. *Id.* at 1058-59. Discount then filed a counterclaim, alleging that its insurer was obligated to indemnify Discount for its own losses and the resultant property damage. *Id* at 1059. Significantly, the insurer submitted an affirmative defense, alleging, in

essence, that Discount intentionally started the fire. *Id.* The insurer moved to stay, invoking the *Wilton-Brillhart* Doctrine. *Id.*

The district court denied the motion, finding significant that no matter the outcome of the underlying action, in which the insurer was not a party, the district court would not be relieved of its obligation to decide numerous questions. *Id.* at 1062. Indeed, it determined abstaining would be contrary to the goals of the Declaratory Judgment Act since the insurance coverage action would resolve the legal obligations between the insurer and Discount. *Id.* at 1060, 1062 ("a district court [has] substantial discretion not to stay a proceeding").

Other decisions from the Illinois federal courts have similarly declined to stay actions because they determined an underlying state court tort suit to be fundamentally distinct from a federal declaratory judgment action seeking to clarify the rights and obligations of an insurer under a liability insurance policy. *See, e.g., Atain Spec. Ins. Co. v. J&M Hauling Co., Inc.*, No. 15-cv-8343, 2016 WL 4720027 (N.D. Ill. Sept. 9, 2016) (copy attached); *Beil v. Ill. Mun. League Risk Mgmt. Assoc.*, No. 16-cv-356, 2016 WL 3999895 (S.D. Ill. July 26, 2016) (copy attached); *Essex Ins. Co. v. DiMucci Dev. Corp. of Ponce Inlet, Inc.*, No. 14-C-7234, 2015 WL 1137648 (N.D. Ill. Mar. 10, 2015) (copy attached); *State Auto Prop. & Cas. Ins. Co v. Perez*, No. 1:13-cv-1132, 2013 WL 12242006 (C.D. Ill. July 16, 2013) (copy attached).

## II.    The Parties To This Declaratory Judgment Action and the Underlying Lawsuit Are Different – Scottsdale Is Not a Party To the Underlying Lawsuit.

For the *Wilton-Brillhart* factor about the identity of the parties to the two actions, Scottsdale is not a party to the Underlying Lawsuit, including the Jenny Defendants' counterclaim. *See Clark*, 841 F. Supp. 2d at 1062 (noting that the insurer was not a party to the state court action and would not be bound by what transpired in state court). Hence, this factor favors Scottsdale.

The Jenny Defendants argue that Scottsdale is participating in the Underlying Lawsuit because it is affording Polo therein a defense under reservation of rights. Even if that meant

Scottsdale's interests were being adequately represented in the Underlying Lawsuit (it does not), Scottsdale is no longer affording Polo a defense – another carrier is doing so. *See* **Exhibit A**, ¶¶ 6-7.

The Jenny Defendants' reliance on *Envision Healthcare, Inc. v. PreferredOne Insurance Co.*, 604 F.3d 983 (7th Cir. 2010), and *Indian Harbor Insurance Co. v. Republic Services, Inc.*, No. 10-C-3310, 2010 WL 3701308 (N.D. Ill. Sept. 10, 2010) (copy attached), is misguided. In particular, abstention in *Republic Services* was proper in light of the presence of dueling insurance coverage actions in state and federal court, which cannot be said to exist here. 2010 WL 3701308, at *2. Also, the *Wilton-Brillhart* Doctrine applied in *Envision* since both the state action and the federal action concerned whether an insurer owed its insured a duty to defend – the amended counterclaim will not decide Scottsdale's obligations to Gurevich and JBI. *See* 604 F.3d at 987.

The Jenny Defendants also make the curious assumption that Scottsdale's complaint for declaratory judgment is nothing more than an affirmative defense and/or counterclaim in the Underlying Lawsuit. This belies the fact that Scottsdale, who is not a party to the Underlying Lawsuit, cannot assert its position in the state court proceeding. Moreover, the Jenny Defendants conveniently ignore a determination of Scottsdale's obligations to Gurevich and Polo is in dispute in the Underlying Lawsuit.

Since Scottsdale is not a party to and is not actively participating in the Underlying Lawsuit, there is no other proceeding or forum, including the Underlying Lawsuit, in which Scottsdale could obtain comparable relief. *See* Ex. A, ¶¶ 6-7. The case cited by the Jenny Defendants, *General Motors Corp. v. M&G Management*, No. 02-C-6558, 2003 WL 21501782 (N.D. Ill. June 25, 2003) (copy attached). There, both the state action and federal action would decide the enforceability (or lack thereof) of the same two contracts, so the state court proceeding would afford the parties the necessary relief. *Id.* at *5. By contrast, the Underlying Lawsuit will not decide whether the Subcontractor Contract constitutes a written contract or agreement in which Polo and Gurevich

and/or JBI agreed that Polo would name Gurevich and JBI as additional insureds on its liability policy. Only this court will render that determination.

### III. The Facts and Issues To Be Adjudicated in This Declaratory Judgment Action Will Neither Interfere with the Underlying Lawsuit Nor Create Inconsistent Results or Duplicative Litigation.

For the most part, this declaratory judgment action and the Underlying Lawsuit, and in particular the Jenny Defendants' Counterclaim against Polo, require resolution of different issues and facts. To the extent they involve consideration of similar issues or facts, such as the effect of the Subcontractor Contract, the fact that Mr. Iatsyshyn died at the construction worksite, and the fact that the Underlying Lawsuit was subsequently filed against Polo and the Jenny Defendants, they do so for different purposes. For instance, the Counterclaim, on the one hand, seeks to adjudicate whether Polo fulfilled its purported obligation to the Jenny Defendants under the Subcontractor Contract to procure insurance coverage for them, while this declaratory judgment action, on the other hand, seeks to adjudicate whether Polo and Gurevich and/or JBI actually entered into a written contract or agreement expressly requiring Polo to name Gurevich and/or JBI as additional insureds under Polo's liability policy. Thus, established precedent strongly counsels against the application of the *Wilton-Brillhart* Doctrine here.

### A. The *Wilton-Brillhart* Doctrine Should Not Consider Overlap Between This Declaratory Judgment Action and the Jenny Defendants' Counterclaim, an Ancillary Risk-Shifting Claim.

As an initial matter, the Jenny Defendants do not cite to, nor could they, a case where a court abstained from deciding an insurer's declaratory judgment action because it might overlap with or encroach upon an ancillary risk-shifting claim brought by one defendant in the underlying tort lawsuit against a co-defendant, such as a counterclaim for indemnification or breach of contract to procure insurance. Instead, the *Wilton-Brillhart* Doctrine should be limited in application to overlap with tort questions in the underlying lawsuit. *See Md. Cas. Co. v. Peppers*, 64 Ill. 2d 187, 197, 355

N.E.2d 24 (1976) (framing Illinois' Prematurity Doctrine in terms of impacting the plaintiff's theory of recovery against an alleged tortfeasor or deciding issues that will impact an alleged tortfeasor's liability to the plaintiff). Therefore, since the Jenny Defendants' breach of contract and indemnification claims against Polo concern risk-shifting just as much as Scottsdale's Complaint for Declaratory Judgment does, and neither concerns the merits of Lopez' wrongful death claims against Polo and the Jenny Defendants, there is no reason for this Court to abstain from deciding any issues presented in this declaratory judgment action that might theoretically overlap with the Jenny Defendants' risk-shifting claims against Polo.

**B.** **Consideration of the Issues and Facts Germane To This Declaratory Judgment Action Does Not Risk Inconsistent Results with the Jenny Defendants' Counterclaim.**

While the declaratory judgment action and the Jenny Defendants' Counterclaim both require consideration of the Subcontractor Contract, the issue to be resolved by this declaratory judgment action does not require anything more than a plain reading of the contract. *See Clark*, 841 F. Supp. 2d at 1064 (noting that even if there might be some overlap between the issues in the federal and state cases, that does not necessarily require abstention). More specifically, Polo has not disputed (nor has Scottsdale) that the Subcontractor Contract is a valid, enforceable, and unambiguous contract with Clybourn. To the extent Gurevich and JBI allege that the Subcontractor Contract requires Polo to procure for them additional insured coverage, that can be discerned from the face of the contract, alone.[1] In other words, the language of the Subcontractor Contract is not in dispute, and in turn, there is no risk for inconsistent verdicts between this declaratory judgment action and the Underlying Lawsuit.

---

[1] Curiously, the Jenny Defendants quoting of Paragraph 6.i. of Subcontractor Contract reveals their contention that the references in the Subcontractor Contract to "General Contractor" apply to them in spite of the document's statement in the first paragraph that "General Contractor" refers only to Clybourn. *See* Dkt. #86, p. 3. At the same time, the Jenny Defendants acknowledge that the term "General Contractor" refers to Clybourn. *Id.*, p. 8.

***Of paramount importance*** is that if Gurevich and JBI contend some other document or oral agreement, such as a project bid proposal or a Construction Manager Contract, obligates Polo to procure additional insured coverage for them, that would be beyond the scope of Scottsdale's asserted coverage defenses, which rest upon the Subcontractor Contract. Or, if Gurevich and JBI contend that the Subcontractor Contract entitles them to some protection from Polo, beyond what is proscribed by the express language of the contract, that is also beyond the scope of Scottsdale's asserted coverage defenses. Moreover, if Gurevich and JBI contend another document was integrated into or made a part of the Subcontractor Contract, that has no bearing on the question of whether Gurevich and JBI are entitled to additional insured coverage, as the Illinois Appellate Court has slammed the door shut on such arguments. *See Westfield Ins. Co. v. FCL Builders, Inc.*, 407 Ill. App. 3d 730, 734-35 (1st Dist. 2011). At bottom, there is no potential for this declaratory judgment action to interfere with the resolution of the Underlying Lawsuit.

The district court was confronted with an analogous situation in *J&M* and declined abstention. There, the underlying lawsuit was a wrongful death case in connection with a demolition project. 2016 WL 4720027 at *1. An insurer then brought suit seeking a determination that it did not have to defend its insured or a putative additional insured based upon, in pertinent part, the lack of timely notice (Count I) and whether the putative additional insured was in fact an insured under the policy language (Count V). *Id.* at *2. The district court determined that since Counts I and V involved facts not in dispute in the state court case, abstention was improper. *Id.* at *3 (finding persuasive that the insurer was not a party to the underlying tort suit and could not be bound to rulings therein). The court explained, "a difference in the relevant issues of the two cases is a reason to resolve a coverage dispute on the duty to defend despite a pending state court injury suit." *Id.*

Likewise here, this Court can determine from the four corners of the Subcontractor Contract whether it constitutes a written contract or agreement between Gurevich/JBI and Polo

requiring Polo to name Gurevich and/or JBI as additional insureds under Polo's liability policy. And as in *J&M*, even if the issues resolved in this declaratory judgment action "may affect the pending state court case in some fashion, [Scottsdale] does not have to wait for state litigation, in which it is not a party to resolve itself." *Id.* at *4.

In attempting to further muddy the waters between this declaratory judgment action and the Underlying Lawsuit, the Jenny Defendants reference a certificate of insurance issued to Jenny Builders[2] to show that it was afforded additional insured coverage under the Policy. However, this certificate is a red herring because it cannot, by itself, satisfy the Additional Insured Endorsement's requirement of a contract directly between Gurevich/JBI and Polo. *See FCL*, 407 Ill. App. 3d at 737. Similarly and contrary to the Jenny Defendants' insinuations (p. 9), Scottsdale's purported knowledge of agreements for Gurevich/JBI to be provided liability coverage has no bearing on whether the Additional Insured Endorsement's requirements are satisfied. At bottom, the Jenny Defendants' arguments in connection with their amended counterclaims are geared to circumvent the four corners of the Subcontractor Contract and show the state court extraneous reasons why Polo owes Gurevich and JBI certain contractual obligations, in spite of the plain language of the insurance and indemnification provisions in the Subcontractor Contract when considered alone.

### C. Since Scottsdale's Coverage Defense Can Be Resolved by a Plain Reading of the Subcontractor Contract, This Declaratory Judgment Action Will Not Result in Duplicative or Piecemeal Litigation.

Defendants assert that a determination of any issue relating to the Subcontractor Contract would result in duplicative and piecemeal litigation. But, whether the Subcontractor Contract contains an obligation that Gurevich and JBI be named as additional insureds on Polo's liability

---

[2] The Defendants erroneously state that Scottsdale issued the certificate to Jenny Builders. Indeed, the certificate clearly stated that it was issued by Biz Broker, Inc. *See* Dkt. #86, p. 4, Ex. F.

Additionally, the Jenny Defendants' entire section of their brief dedicated to the certificate and the "Unpleaded But True Facts" Doctrine is wholly immaterial to this motion. The Jenny Defendants instead appear to be making a substantive argument in favor of coverage. This is wrong time and place for doing so.

policy is apparent from the contract itself. Likewise, whether Polo agreed with Gurevich and JBI in writing in a contract or agreement about their being named as additional insureds on Polo's liability policy is apparent from the written contract or agreement itself. If Gurevich and JBI contend this Court must look at parol evidence or other documents that explain the Subcontractor Contract, then that is beyond the scope of Scottsdale's coverage defense. At bottom, there is no good reason why answering these legal questions could create piecemeal or duplicative litigation.

> **D. Some Minimal Overlap Between This Declaratory Judgment Action and the Jenny Defendants' Counterclaims Does Not Warrant Total Abstention Because This Action May Be Resolved Via the Injury To Worker Exclusion.**

Importantly, this Court need not even address the concerns raised by the Jenny Defendants with respect to any potential overlap between this declaratory judgment action and their counterclaims against Polo because Scottsdale's coverage obligations can be resolved without foraying into any facts at issue in the Jenny Defendants' counterclaims. *See Perez,* 2013 WL 12242006, at *6. Indeed, the application of the Injury to Worker Exclusion, by itself, will completely dispose of this declaratory judgment action, and in turn, there would be no need to consider whether Gurevich and JBI qualify as additional insureds under the Scottsdale Policy. For a more detailed discussion of the application of the Injury to Worker Exclusion, please see Scottsdale's response brief to Lopez's motion to dismiss or stay.

At bottom, even though there should be no real overlap between the determinations to be made by this Court and the state court, some minimal overlap between the two determinations does not warrant abstention over the entirety of this declaratory judgment action, which can be decided based solely on the application of the Injury to Worker Exclusion to the claims arising from the Underlying Lawsuit.

IV.    **A Declaration of Whether Scottsdale Must Defend the Jenny Defendants in the Underlying Lawsuit Serves a Useful Purpose of Clarifying Who Must Fund Their Defense.**

Proceeding with this declaratory judgment serves a particularly useful purpose in that it may very well aid the resolution of the Underlying Lawsuit if Scottsdale's duties and obligations to the Jenny Defendants and Polo are clarified. Indeed, the Seventh Circuit acknowledges that an insurer and insured have a "mutual interest in speedy resolution of the insurer's duty to defend to supply [it/him] a defense against a tort claim that may fall outside the coverage of the insurance policy." *Zavalis*, 52 F.3d at 697. Accordingly, knowing whether Scottsdale, as an insurer, must defend the Jenny Defendants, and could have a duty to defend Polo if the other carrier's policy is exhausted, should have a distinct impact on the settlement dynamics of the Underlying Lawsuit. *See Beil*, 2016 WL 3999895, at *4. In turn, this *Wilton-Brillhart* factor favors Scottsdale, too.

## CONCLUSION

The *Wilton-Brillhart* Doctrine does not counsel abstention under the circumstances because this Court can determine whether the requirements of the Additional Insured Endorsement have been satisfied without interfering with the issues to be adjudicated in the Underlying Lawsuit, and more specifically, the issues presented by the Jenny Defendants' Amended Counterclaims against Polo. Indeed, there is overwhelming precedent interpreting the *Wilton-Brillhart* Doctrine and holding that insurance coverage actions should not be dismissed or stayed merely because a related tort action, to which an insurer is not a party, is ongoing.

Additionally, even if this Court were to consider the application of the *Wilton-Brillhart* Doctrine to an ancillary risk-shifting claim (it should not), this Court need only undertake a plain reading of the Subcontractor Contract to resolve Scottsdale's coverage defense. To the extent Gurevich and JBI contend that the inquiry is more laborious or intensive because it requires consideration of documents other than the four corners of the Subcontractor Contract, that does

not support abstention because those arguments (and evidence) are beyond the scope of Scottsdale's coverage defense.

Therefore, this Court should exercise its substantial discretion and refuse to dismiss or stay the instant Coverage Action. Alternatively, should this Court believe abstention is warranted, which Scottsdale vigorously denies, this Court should stay the proceedings. *See Principal Life Ins. Co. v. Crane*, No. 16-cv-182, 2016 WL 1270516 (N.D. Ill. Mar. 31, 2016) (case attached) (a stay rather than dismissal is the preferable course "as it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the controversy").

WHEREFORE, Plaintiff, SCOTTSDALE INSURANCE COMPANY, respectfully requests this Court deny the Jenny Defendants' motion to stay or dismiss without prejudice.

DATED: January 19, 2017         Respectfully submitted,

**GOLDBERG SEGALLA, LLP**

By: /s/Jonathan L. Schwartz
Attorney for Scottsdale Insurance Company

Jonathan L. Schwartz (ARDC #6287338)
Colin B. Willmott (ARDC #6317451)
GOLDBERG SEGALLA LLP
311 S. Wacker Dr., Ste. 2450
Chicago, IL 60606
Tel: (312) 572-8411
Fax: (312) 572-8401
jschwartz@goldbergsegalla.com
cwillmott@goldbergsegalla.com